**United States District Court**
For the Northern District of California

1

2              IN THE UNITED STATES DISTRICT COURT

3              FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5   KENDRICKS ANDERSON,                        No. C 04-4808 SBA

6                Plaintiff,                     **ORDER**

7   v.

8   PITNEY BOWES, INC., PITNEY BOWES
    MANAGEMENT SERVICES, INC., and
9   DOES 1 through 10, inclusive,

10               Defendants.

11  _____/

12
         This matter comes before the Court on Defendant Pitney Bowes' ("PB")[1] motion to compel
13
    arbitration and stay the action pending arbitration.  Having read and considered the arguments presented by
14
    the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution
15
    without a hearing.  The Court hereby GRANTS Defendant's motion to compel binding arbitration and stay
16
    the action pending arbitration.
17
                                        **I.  BACKGROUND**
18
         Plaintiff Kendricks Anderson ("Anderson") filed suit in San Francisco Superior Court, alleging,
19
    *inter alia,* that Defendant PB illegally terminated his employment because of his race.  PB removed the
20
    case to federal court on diversity grounds.
21
         On September 29, 2003, Plaintiff applied for employment with PB.  (Mot. to Compel at 1.)  As
22
    part of the application process, Plaintiff signed a Statement of Terms and Conditions ("Statement"),[2] which
23

24         [1]  Defendants include Pitney Bowes, Inc., Pitney Bowes Management Services, Inc., and Does 1
    through 10.  For the purposes of this motion, the Court will refer to Defendants collectively as "PB" or
25  "Defendant."

26         [2]  The Statement is dated September 29, 2003.  (Pyle Decl., Ex. A at 1.)  However, Plaintiff
    contends that he did not sign the Statement, or the PB Resolve Agreement (*see infra*, p. 2), until January
27  2004.  (Anderson Decl. at ¶ 4.)  Plaintiff alleges that he was instructed to back-date these documents by a
    human resources representative.  (*Id.*)  This factual dispute is irrelevant to the Court's decision, as Plaintiff's
28  five causes of action all stem from wrongful termination, which allegedly occurred in June 2004, at least six

provides that:

> As a condition of your employment, you will be required to sign and comply with a PB Resolve Agreement.  The PB Resolve Agreement requires, among other provisions, that all covered disputes you may have with the Company and the Company may have with you, be submitted to the Company's alternate dispute resolution process ["PB Resolve"] which includes full and final resolution of disputes through a four-step process, ending with binding arbitration.

(Pyle Decl., Ex. A at ¶ 1(c).)  Plaintiff also signed the PB Resolve Agreement ("Agreement"), which requires the parties to submit any claims related to termination, violation of public policy, and discrimination to binding arbitration.[3]  *(See id.*, Ex. B at 1.)  On the first page, in bold font, the Agreement states that, "**By signing the Agreement You are specifically acknowledging that you have had an opportunity to review the PB Resolve Program Manual and agree to abide by its terms**."  (*Id*. (capitalization and emphasis in original).)  The Agreement further provides that:

> The Arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable. . . . The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes . . . .

(*Id.* at 2.)  The last paragraph of the Agreement reads as follows:

> Voluntary Agreement
>
> I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF. **I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.**

(*Id*. at 4 (capitalization and emphasis in original).)  Directly underneath the "Voluntary Agreement" section is a separate line for an employee to initial acknowledgment of this paragraph.  *Id*.  Neither party disputes that Plaintiff did not place his initials on this separate line.  The parties also do not dispute, however, that Plaintiff signed on the signature line at the end of the Agreement.

Defendant now seeks to compel arbitration based on the executed Statement and Agreement. Defendant contends that the Court must order arbitration on all issues, including the gateway issues of

---

months after Plaintiff alleges he signed the documents. (*See, e.g.,* Compl. at ¶¶ 20-40.)

[3] For the purposes of this motion, Plaintiff does not dispute that the Agreement, if valid and binding, covers all claims raised in his complaint.

2

arbitrability.  In opposition, Plaintiff argues that the Court, as opposed to the arbitrator, must determine

arbitrability.  Plaintiff further alleges that his conscious refusal to initial the "Voluntary Agreement" paragraph

shows that Plaintiff did not agree to arbitrate his claims against PB.  Finally, Plaintiff argues that the

Agreement is unenforceable because it is both substantively and procedurally unconscionable.[4]  Because

the Agreement clearly and unmistakably provides an arbitrator with exclusive jurisdiction to decide issues of

arbitrability, the Court GRANTS Defendant's motion to compel and stay the action pending arbitration.

## II. DISCUSSION

### A.     Legal Standard

The dispositive issue is who should decide arbitrability: the Court or an arbitrator.  A dispute is

arbitrable if: (1) there was an agreement to arbitrate between the parties; and (2) the agreement covers the

dispute.  *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83-4 (2002).  "Arbitration is a matter of

contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to

submit."  *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).  The question whether

parties have submitted a particular dispute to arbitration, i.e., the "question of arbitrability," is generally an

issue for judicial determination.  *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643,

649 (1986).  Parties are free, however, to contract around this default rule by assigning the determination of

arbitrability to an arbitrator.  *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).

The issue of who should decide arbitrability turns on what the parties agreed to in their contract.

*Id.* at 943.  "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability),

courts generally . . . should apply ordinary state law principles that govern the formation of contracts."[5]  *Id*.

at 944.  There is a presumption that the parties did not agree to submit questions regarding the arbitrator's

---

[4]  Plaintiff contends that the Agreement is unconscionable because it was (1) offered to him on a "sign-it-or-lose-your-job" basis; (2) lacking in mutuality, and (3) unduly restrictive in its discovery limitations.  (Opp. to Def's Mot. to Compel ("Opp.") at 13-17 (citing *Fitz v. NCR Corp*., 118 Cal. App. 4th 702 (2004))).  Plaintiff does not, however, contend that the paragraph arguably giving the arbitrator the power to decide arbitrability is unconscionable.

[5]  Both parties agree that California law governs this aspect of the dispute.  In any event, California courts often look to federal law in deciding arbitration issues and "California law is consistent with federal law on the question of who decides disputes over arbitrability."  *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 553 (Ct. App. 2004).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   jurisdiction to that same arbitrator.[6]  Consequently, if the contract is silent or ambiguous, the Court decides

2   arbitrability.  *Id*. at 944-45; *Dream Theater*, 124 Cal. App. 4th at 553.  However, if the parties "clearly

3   and unmistakably" empowered an arbitrator to determine arbitrability, the Court must compel arbitration of

4   the gateway issues as well.  *AT&T Technologies*, 475 U.S. at 649; *Dream Theater*, 124 Cal. App. 4th at

5   553; *Parker v. Twentieth Century-Fox Film Corp.*, 118 Cal. App. 3d 895, 901-04 (Ct. App. 1981)

6   (parties did not expressly provide arbitrator with authority to decide his or her own jurisdiction).  Even then,

7   the Court must examine the underlying contract to determine whether the parties have in fact agreed to

8   commit the question of arbitrability to the arbitrator.  *Freeman v. State Farm Mut. Auto. Ins. Co.,* 14

9   Cal. 3d 473, 480 (1975)*; Dream Theater*, 124 Cal. App. 4th at 553; *Airline Pilots Ass'n, Int'l v.*

10  *Midwest Airlines Express, Inc.*, 279 F.3d 553, 555 (7th Cir. 2002) ("[T]he parties to a contract can if

11  they wish assign the determination of arbitrability of a dispute to an arbitrator – but then the question

12  whether they have done that is for the court.").  "If the issues in a case are within the reach of the

13  Agreement," the court must, upon request by either party, grant a stay of the action pending arbitration.  *In*

14  *re Complaint of Hornbeck Offshore Corp*., 981 F.2d 752, 754 (5th Cir. 1993) (internal quotations

15  omitted).

16  **B.      Analysis**

17          Defendant contends that the parties' Agreement expressly and exclusively assigned questions of

18  arbitrability to an arbitrator.  In response, Plaintiff contends that the Court must decide: (1) whether the

19  Agreement is unconscionable; and (2) the significance of Plaintiff's failure to initial the "Voluntary

20  Agreement" paragraph.  However, Plaintiff does not cite a single case in support of his proposition that the

21  Court may determine arbitrability when the underlying contract unquestionably empowers an arbitrator with

22  this authority.  (*See, e.g.*, Opp. at 7-11.)  Instead, Plaintiff attempts to distinguish the four cases upon which

23  Defendant relies and makes a policy argument: if the Court compels arbitration, it will lose all authority to

24

25          [6] The general presumption favoring arbitration is reversed when deciding *who* primarily should
    decide arbitrability, as opposed to "*whether* a particular merits related-dispute is arbitrable because it is
    within the scope of a valid arbitration agreement."  *First Options*, 514 U.S. at 944; *Mitsubishi Motors*
26  *Corp. v. Soler Chrysler-Plymouth, Inc*. 473 U.S. 614, 626 (1985) (general presumption concerning the
    scope of arbitrable issues in favor of arbitration).  The presumption is reversed because the question of who
27  decides whether a dispute is arbitrable is "rather arcane.  A party often might not focus upon that question
    or upon the significance of having arbitrators decide the scope of their own powers."  *First Options*, 514
28  U.S. at 945.

4

**United States District Court**

For the Northern District of California

1   decide the enforceability of an unconscionable agreement simply because an employer has so provided in

2   the text of a contract.  (*Id.* at 8.)

3       The Agreement "clearly and unmistakably" provides an arbitrator with the exclusive authority to

4   determine whether the Agreement is unenforceable.  *AT&T Technologies*, 475 U.S. at 649; *First*

5   *Options*, 514 U.S. at 944-45.  The Agreement mandates that "the Arbitrator shall have exclusive authority

6   to resolve any dispute relating to the interpretation, applicability, or enforceability or formation of this

7   Agreement, including . . . any claim that all or any part of this Agreement is void or voidable."  (Pyle Decl.,

8   Ex. B at 2 (emphasis added).)  Neither a court nor an arbitrator is free to ignore this provision in the

9   Agreement.  The parties unambiguously expressed their intent to submit the question of unconscionability to

10  an arbitrator by giving him or her the exclusive power to decide the Agreement's formation, enforceability,

11  applicability and whether all or any part of it is void or voidable.  *See, e.g., Armendariz v. Foundation*

12  *Health Psychcare Servs.*, 24 Cal. 4th 83, 113-14 (2000) (unconscionability renders a contract

13  unenforceable); *Three Valleys Municipal Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th

14  Cir. 1991) ("If the dispute is within the scope of an arbitration agreement, an arbitrator may properly

15  decide whether a contract is 'voidable' because the parties have agreed to arbitrate the dispute.").  This

16  language also evidences a clear intent that an arbitrator would decide the significance, if any, of Plaintiff's

17  failure to initial one of the Agreement's paragraphs.[7]

---

18

19      [7]  Plaintiff contends that no agreement to arbitrate exists because of his failure to initial the
    "Voluntary Agreement" paragraph.  However, Plaintiff fully admits that he signed two documents, the
20  Statement and the Agreement, both of which unambiguously evidence the parties intent to submit certain
    disputes exclusively to arbitration.  Further, the "Voluntary Agreement" paragraph states that: "**I**
21  **UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO**
    **A JURY TRIAL**."  (Pyle Decl., Ex. B at 4 (emphasis in original).)  Consequently, a PB employee forfeits
    his right to a jury trial when he signs the Agreement, not when he places his initials by the "Voluntary
22  Agreement" paragraph.  (*See id.*)  Although Plaintiff states in his declaration that he did not initial this
    paragraph because he never intended to agree to arbitrate (Anderson Decl. at ¶ 8), a party's hidden
23  intentions are immaterial to the determination of mutual assent.  *See, e.g., Horacek v. Smith,* 33 Cal. 2d
    186, 193 (1948) (undisclosed intentions irrelevant); 1 WITKIN SUM. CAL. LAW CONTRACTS § 119 (9th
24  ed. 2004) (mutual assent is determined by the parties' overt acts, not their hidden intentions); *Zurich*
    *General Acc. & Liability Assur. Co. v. Industrial Acc. Com.*, 132 Cal. App. 101, 104 (1933) ("The
25  apparent mutual assent of the parties, essential to the formation of a contract, must be gathered from the
    language employed by them . . . It judges of his intention by his outward expressions and excludes all
26  questions in regard to his unexpressed intention. If his words or acts, judged by a reasonable standard,
    manifest an intention to agree in regard to the matter in question, that agreement is established, and it is
27  immaterial what may be the real but unexpressed state of his mind on the subject.").  Plaintiff's execution of
    both the Statement and the Agreement objectively manifest his intent to agree to arbitrate certain disputes,
28  including arbitrability. (*See* Pyle Decl., Ex. B at 2 ("The Arbitrator shall have the exclusive authority to

**United States District Court**

For the Northern District of California

1    Courts have found agreements to submit arbitrability to arbitrators with similar contractual language.

2  *See, e.g.*, *Airline Pilots*, 279 F.3d at 556 ("[W]hen an arbitration clause is so broadly worded that it

3  encompasses disputes over the scope or validity of the contract in which it is embedded, issues of the

4  contract's scope or validity are for the arbitrators.").  In fact, courts have found agreements to commit

5  arbitrability to the arbitrator with contractual language that is much less "clear and unmistakable."  In

6  *Dream Theater*, for example, the sellers of a multimedia and entertainment business contended that the

7  arbitration clause in their contract of sale did not apply to them because it was limited to third party

8  indemnity claims.  124 Cal. App. 4th at 550.  The arbitration clause only specified that arbitration would be

9  "in accordance with the AAA Commercial Arbitration Rules."  *Id*.  The AAA Rules, in turn, provided "that

10 the arbitrator 'shall have the power to rule on his or her own jurisdiction, including any objections with

11 respect to the existence, scope or validity of the arbitration agreement.'"  *Id*.  However, this language was

12 not actually present in the agreement; a contracting party needed extrinsic materials to understand that they

13 were forfeiting their right to have a court determine arbitrability.  *Id*.  Despite this, the *Dream Theater* court

14 held that the contractual language was "clear and unmistakable" evidence that the parties intended an

15 arbitrator, rather than the court, to decide whether their dispute was subject to arbitration.  *Id.* at 549.

16 Here, the Agreement's arbitration clause facially gives an arbitrator the exclusive authority to determine his

17 or her own jurisdiction; one need not reference extrinsic materials, such as the AAA Rules, to determine

18 whether the parties intended an arbitrator to decide arbitrability.  Because the parties clearly and

19 unmistakably committed the issue of arbitrability to the arbitrator, the Court compels  arbitration.

20    Plaintiff argues that *Dream Theater* is inapplicable because the court dealt with an indemnity issue,

21 as opposed to an unconscionability argument.  However, the *Dream Theater* court evaluated the same

22 issue as this Court faces.  The issue is not indemnity or unconscionability, but rather who decides whether

23 an arbitration clause actually binds a party to arbitrate their claim- a court, or an arbitrator.  124 Cal. App.

24 4th at 551-52.  Further, Plaintiff makes no effort to explain why this distinction, even if correct, would

25

26 resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement,
   including but not limited to any claim that all or any part of this Agreement is void or voidable.").)

27 Whatever significance his failure to initial may have on the arbitrator's decision regarding the Agreement's
   enforceability, it does not impact the Court's determination that a contract to arbitrate between the parties

28 exists.

6

**United States District Court**
For the Northern District of California

1  compel an opposite result.

2  Plaintiff also contends that the Court must decide the unconscionability and "failure to initial"

3  arguments because the "*Dream Theater* court, while ultimately holding that the arbitrator did have the

4  authority . . . to arbitrate the claim in question, construed and interpreted the agreement, examined the

5  evidence of the parties intentions, and made its decision." (Opp. at 11.)  Plaintiff misunderstands the scope

6  of a court's review under these circumstances.  The Court, by conducting a <u>facial and limited review</u> of the

7  contract, must only decide whether the parties have in fact clearly and unmistakably agreed to commit the

8  question of arbitrability to the arbitrator.  *See, e.g., United Steelworkers of America v. American Mfg.*

9  *Co.*, 363 U.S. 564, 567-68 (1960); *Airline Pilots*, 279 F.3d at 555; *Dream Theater,* 124 Cal. App. 4th

10  at 553 (determining who decides arbitrability "necessarily requires the courts to examine and, *to a limited*

11  *extent*, construe the underlying agreement"); *Johnston Boiler Co. v. Local Lodge No. 893*, 753 F.2d 40,

12  43 (6th Cir. 1985).  The Supreme Court explained in *United Steelworkers* that:

13  The function of the court is very limited when the parties have agreed to submit all questions of
14  contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking
arbitration is making a claim which on its face is governed by the contract. Whether the moving
party is right or wrong is a question of contract interpretation for the arbitrator. In these
15  circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his
judgment and all that it connotes that was bargained for.

16  *United Steelworkers of America,* 363 U.S. at 567-68.  It would be error for the Court to determine the

17  merits of Plaintiff's argument, i.e. whether the Agreement is unenforceable, when the parties clearly

18  submitted that question to an arbitrator.  *See id.*

19  Plaintiff conflates two separate issues: 1) <u>who</u> decides arbitrability; and 2) <u>whether</u> a dispute is

20  actually arbitrable.  If there is a dispute over <u>who</u> decides, a court must determine if the parties

21  unambiguously vested this authority with an arbitrator.  When a court concludes that the parties clearly

22  empowered an arbitrator with this decision, however, it would defy logic, tread on the prerogative of the

23  arbitrator, and deprive the parties of their contract if a court were then to turn around and decide this very

24  issue itself.  *See, e.g., id.*; *AT&T Technologies*, 475 U.S. at 649-50.  The *Dream Theater* court

25  recognized this problem, and did not exceed the scope of its authority in conducting a limited review to

26  determine solely whether the parties in fact agreed to submit arbitrability issues to an arbitrator.  *Dream*

27  *Theater,* 124 Cal. App. 4th at 552-55.

28

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff erroneously contends that the Supreme Court's decisions in *AT&T* and *First Options* "**absolutely reject**[] the position argued for by Pitney Bowes here." (Opp. at 9 (emphasis in original).)  In *AT&T Technologies v. Communications Workers,* the Court reaffirmed the basic principles of arbitration.  As quoted above, the first principle is that "'arbitration is a matter of contract.'" *AT&T Technologies*, 475 U.S. at 648 (citing *Warrior & Gulf*, 363 U.S. at 582 & *United Steelworkers of America*, 363 U.S. at 570-71 (1960) (Brennan, J., concurring)).  The second rule, which Plaintiff partially quotes, is that the question of arbitrability is generally for a court.  Plaintiff's quotation, however, leaves out the very next sentence of the Court's decision: "**Unless the parties clearly and unmistakably provide otherwise**, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id*. at 649 (emphasis added).  Here, the parties did in fact "clearly and unmistakably" contract around the default rule established by the *AT&T* Court.  *See supra* at 5-8.

Similarly, Plaintiff misconstrues the Supreme Court's analysis in *First Options*.  As stated by the Court:

> We believe the answer to the "who" question [] is fairly simple. Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute [], so the question "who has the primary power to decide arbitrability" turns  upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration?

*First Options*, 514 U.S. at 943.  The Supreme Court then affirmed the Court of Appeals finding that the dispute was subject to independent review by the courts "because the Kaplans did not clearly agree to submit the question of arbitrability to arbitration." *Id*. at 947.  Here, conversely, the Agreement unquestionably provides an arbitrator with exclusive jurisdiction over arbitrability issues.

Finally, Plaintiff argues that compelling arbitration in this case will divest a court of jurisdiction to decide an arbitration agreement's enforceability, including a clearly adhesive one.  The Court is not free, however, to ignore the clear intent of the parties' contract.  The basic objective is to ensure that arbitration agreements, just like all contracts, "are enforced according to their terms." *First Options*, 514 U.S. at 947 (internal quotations omitted).  Further, arbitration, and other forms of alternate dispute resolution, frequently divest courts of cases and issues which they would normally adjudicate.  Finally, Plaintiff's argument that the Court will retain no power after compelling arbitration is incorrect.  If the arbitrator determines that the Agreement is unconscionable and consequently unenforceable, the Court will then decide Plaintiff's

8

United States District Court

For the Northern District of California

1   employment dispute.  The parties can also return to the Court and request that it either vacate or confirm

2   the arbitrator's final award.  Plaintiff's policy argument, without any legal authority, simply does not compel

3   a different result.  Because arbitration is a matter of contract, and the Agreement is unmistakably clear, the

4   Court GRANTS Defendant's motion to compel arbitration.

5        Defendant also requests that this Court stay proceedings pending the arbitrator's determination.

6   Plaintiff does not address this point in his opposition.  The Federal Arbitration Act provides that:

7        If any suit or proceeding be brought in any of the courts of the United States upon any issue
         referable to arbitration under an agreement in writing for such arbitration, the court in which such
8        suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to
         arbitration under such an agreement, shall on application of one of the parties stay the trial of the
9        action until such arbitration has been had in accordance with the terms of the agreement, providing
         the applicant for the stay is not in default in proceeding with such arbitration.

10  9 U.S.C. § 3.  The stay provision is mandatory: "If the issues in a case are within the reach of the

11  Agreement, the district court has no discretion under section 3 to deny the stay."  *Hornbeck Offshore*

12  *Corp*., 981 F.2d at 754 (5th Cir. 1993) (internal quotations omitted).  Because the parties agreed to

13  arbitrate the issue of arbitrability, the Court GRANTS Defendant's motion for a stay as a matter of course.

14

15                                  **III.  CONCLUSION**

16       For the foregoing reasons, IT IS HEREBY ORDERED THAT Defendant's Motion to compel

17  arbitration and stay the action pending arbitration [Docket No. 8] is GRANTED.

18       IT IS SO ORDERED.

19

20

21
    Dated: <u>May 4, 2005</u>                              /s/ Saundra Brown Armstrong
22
                                                           SAUNDRA BROWN ARMSTRONG
23                                                         United States District Judge

24

25

26

27

28

9